UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOEL U., <br><br>　　　　　Plaintiff, <br><br>　　v. <br><br>COMMISSIONER OF SOCIAL SECURITY, <br><br>　　　　　Defendant. | Case No. 3:24-cv-05848 <br><br> ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR RECONSIDERATION |

　　　　Plaintiff Joel U. seeks review of the denial of his application for Social Security Disability Insurance Benefits ("DIB"). Plaintiff alleges the Administrative Law Judge ("ALJ") erred by failing to "provide clear and convincing reasons for rejecting Plaintiff's mental health limitations." Dkt. 9 at 1; *see generally* Dkt. 3. After reviewing the record, the Court concludes that the ALJ erred by failing to consider all the evidence provided about Plaintiff's fluctuating symptoms. The Court accordingly REVERSES the Commissioner's final decision and REMANDS the case for further proceedings.

**I.　　BACKGROUND AND PROCEDURAL HISTORY**

　　　　Plaintiff Joel U. was born on October 4, 1975 and was 43 years old on the alleged date of disability onset of August 5, 2019. Dkt. 7, Administrative Record ("AR") 31. He has at least a high school education. *Id.* Plaintiff has past relevant work experience as a welder/boilermaker.

*Id.*; *see also* AR 79. Plaintiff held the job for six years but described sustaining the position as both physically and emotionally challenging. AR 48–51, 762. Plaintiff suffers from chronic pain related to joint degeneration, AR 21, as well as mental health challenges that make it difficult for him to work and function. *See, e.g.*, AR 21, 25, 57, 86, 118, 120, 518–19, 521, 643.

Plaintiff's DIB application under 42 U.S.C. § 423 (Title II) of the Social Security Act was denied both on initial review and on reconsideration. AR 168–74; 176–82. On September 3, 2019, Plaintiff applied for a period of disability and disability insurance benefits, alleging disability beginning December 17, 2018. AR 164, 415. The claim was denied on February 11, 2020, and upon reconsideration on February 8, 2021. AR 164. Plaintiff then filed a written request for hearing on April 9, 2021. AR 204–05. There, Plaintiff amended his claim and requested disability since August 5, 2019, the amended alleged onset date. AR 20, 73–74, 83.

ALJ Allen G. Erickson reviewed Plaintiff's amended case. AR 16, 35, 175. He found that Plaintiff met the insured status requirement and had not engaged in substantial gainful activity since August 5, 2019. AR 166. He also found that Plaintiff had several impairments: degenerative joint disease of the left shoulder, degenerative disc disease and degenerative joint disease of the cervical spine, degenerative disc disease of the thoracic spine, bipolar disorder, panic disorder, depression, post-traumatic stress disorder (PTSD), borderline personality disorder, and attention deficit and hyperactivity disorder (ADHD). *Id.* But, the ALJ concluded, Plaintiff did not establish that any of his impairments met or equaled the criteria of any of the listed impairments in the relevant regulations. AR 167. For example, with regards to the spinal degenerative changes, the ALJ noted that Plaintiff still demonstrated "normal strength, . . . sensation, . . . [and] gait and station." *Id.* And for each of Plaintiff's mental health impairments, the ALJ found that they were only moderate limitations—not extreme or marked limitations as required under the applicable regulations. AR 168.

Ultimately, the ALJ found, Plaintiff had the following residual function capacity (RFC):

> perform light work . . . except he can occasionally climb ladders, ropes, and scaffolds; can occasionally crawl; can have occasional exposure to vibration and extreme cold; and can occasionally perform overhead reaching. The claimant can understand, remember, and apply short and simple instructions; can perform routine tasks; cannot work in a fast-paced production type environment; can make simple decisions; can have routine workplace changes; and can have occasional interaction with the general public.

AR 169. Relying on the analysis of a vocational expert, the ALJ concluded there were jobs in the national market that Plaintiff could perform: cleaner—housekeeping, routing clerk, and collator operator. AR 174.

Plaintiff appealed. AR 180. The Appeals Council reversed and remanded to the ALJ. *Id.* The Appeals Council directed the ALJ to "[g]ive further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations[.]" AR 17.

The ALJ reconsidered Plaintiff's application in October 2023. AR 33. On remand, the ALJ found that Plaintiff had the same severe impairments: degenerative joint disease of the left shoulder, degenerative disc disease and degenerative joint disease of the cervical spine, degenerative disc disease of the thoracic spine, bipolar disorder, panic disorder, depression, PTSD, borderline personality disorder, and ADHD. AR 20. The ALJ found that the medically determinable impairments significantly limited Plaintiff's ability to perform basic work activities. *Id.* Still, the ALJ again found that the impairments did not meet or medically equal the severity of the impairments listed in the relevant regulations. *Id.* at 21.

For example, in understanding, remembering, or applying information, the ALJ found that Plaintiff had a moderate limitation. *Id.* Still, the ALJ noted several issues with this finding: "The claimant alleges difficulty with memory, understanding, and following instructions. During

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR RECONSIDERATION - 3

examination, he demonstrates impaired recent memory. However, the claimant also has demonstrated normal memory." *Id.* (citations omitted). He did the same for Plaintiff's ability to interact with others, his ability to concentrate, and his ability to adapt/manage himself. *Id.* at 21–22. Thus, the ALJ found, "because the claimant's mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria are not satisfied." He also considered the "paragraph C" criteria, and concluded that "[a] careful examination of the record evidence shows no history of a mental impairment that is 'serious and persistent,' and there is no evidence of (1) medical evidence, mental health therapy, psychological supports, or a highly structured settings that is ongoing and that diminishes the symptoms and signs of the claimant's mental disorder and (2) marginal adjustment, that results in minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life." AR 22.

The ALJ thus found that Plaintiff had the following RFC to perform light work:

> except he can occasionally climb ladders, ropes, and scaffolds; can occasionally crawl; can have occasional exposure to vibration and extreme cold; and can occasionally perform overhead reaching. The claimant can understand, remember, and apply short and simple instructions; can perform routine tasks; cannot work in a fast-paced production type environment; can make simple decisions; can have routine workplace changes; and can have occasional interaction with the general public.

AR 23. The ALJ noted that Plaintiff did not have the RFC to "perform the full range of light work[.]" AR 32. In fact, the ALJ explained, Plaintiff's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." *Id.* Thus, the ALJ required a vocational expert to assess additional limitations on Plaintiff's ability to perform those jobs included in the "unskilled light occupational base[.]" *Id.* He notes that the vocational expert testified that Plaintiff could perform the requirements of a cleaner/housekeeper, a routing clerk, and a collator operator. *Id.* Accordingly, the ALJ denied Plaintiff benefits. *Id.*

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR RECONSIDERATION - 4

## II. DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1999)).

### A. Arguments Raised to the Court

Plaintiff alleges that the ALJ "failed to provide specific clear and convincing reasons for rejecting [his] mental health limitations" when considering the remand from the Appeals Council. Dkt. 9 at 1. Plaintiff explains that he submitted opinions from three new treating providers (Freeman, Ramos, and Li), which "provided further support for disability based on the combined impact of the Plaintiff's pain and mental impairments." *Id.* at 2. According to Plaintiff, the ALJ denied the claim again without fixing the errors noted in the remand. *Id.* This includes both the RFC and the rationale. *Id.* Plaintiff contends that the ALJ did not seriously consider the severity of Plaintiff's disability and the fluctuations in his condition. *Id.* He claims that the medical records, "while showing fluctuation, have never shown stability in ability to maintain attention and concentration or ability to interact appropriately." *Id.* at 3. The briefing focuses quite minimally on Plaintiff's pain and physical capacity; it is directed instead at his mental health and attention/concentration issues. *See generally id.*

Plaintiff asks that the ALJ's second decision be reversed and remanded for a de novo hearing. He does not ask that the Court find him disabled nor that the Court remand for benefits.

Yet many of Plaintiff's arguments are underdeveloped. As the Commissioner points out, Plaintiff "summarily states in his brief he disputes additional findings and conclusions from the ALJ's decision. . . . These conclusory assertions, however, are not stated with specificity and arguments are therefore waived. . . . Plaintiff does not challenge the ALJ's analysis of the

medical opinion evidence or the consideration of his subjective symptom complaints regarding his physical impairments." Dkt. 13 at 2 n.1 (citations omitted).

The Ninth Circuit has explained that the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009) (citing cases). By failing to adequately develop an argument, a claimant fails to meet their burden to show that an alleged error was harmful. *See Ve Thi Nguyen v. Colvin*, No. C13-882 RAJ-BAT, 2014 WL 1871054, at * 2 (W.D. Wash., May 8, 2014) (citing *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005)). And, given the nature of the adversarial process, a claimant "cannot make an assertion and leave the Court to do counsel's work—framing the argument and putting flesh on its bones through a discussion of the applicable law and facts." *June J. v. Comm'r of Soc. Sec.*, No. C22-1525-BAT, 2023 WL 4998846, at *2 (W.D. Wash. Aug. 4, 2023) (citations omitted); *see also Brison v. Colvin*, No. 2:14-CV-00149-FVS, 2015 WL 2152674, at *7 (E.D. Wash. May 6, 2015) ("Because plaintiff failed to develop this argument, the court declines to further address this issue.") (citing cases).

To challenge the ALJ's decision, Plaintiff makes two arguments—only one of which is fully developed. First, Plaintiff claims:

> The ALJ's description underrepresents the severity supported by the record which shows him presenting at times as disorganized, inattentive and distractable and needing redirection, struggling with racing thoughts, losing focus mid-sentence, unable to maintain thoughts during a conversation, etc., but even the ALJ's recitation shows that even if he gets some improvement in mood over the course of treatment, he never really stabilizes but just fluctuates up and down.

Dkt. 9 at 2.

In arguing that the ALJ failed to fully consider all the evidence submitted, Plaintiff points to various pieces of the record. *Id.* at 2–4. Plaintiff claims that the ALJ ignored some of the relevant evidence, and some he concedes the ALJ cited. *Id.* But each citation develops one

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR RECONSIDERATION - 6

central argument: the ALJ erred in his consideration of the mental health evidence in developing an RFC for Plaintiff. *See id.* Plaintiff contends that the ALJ selectively picked evidence that failed to illustrate an accurate history of Plaintiff's impairments. *See id.* at 2, 4–5.

Second, Plaintiff claims that the ALJ overly focused on his "conservative treatment" regimen. *Id.* at 5. Plaintiff explains that, "while conservative treatment can be a reason to doubt the severity of the Plaintiff's allegations, here it makes no sense. . . . [because] the very nature of the Plaintiff's mental health limitations means that he will never need hospitalization as it is unnecessary for concentration issues." *Id.* Thus, "the lack of such extreme treatment in no way discredits the Plaintiff, particularly as there are numerous instances in which the Plaintiff is observed having such difficulties." *Id.* But, for this argument, Plaintiff provides no citations to the record nor any case law. *See id.* To the extent that the ALJ only focused on conservative treatment as a basis for his decision, the relevant facts may bolster Plaintiff's cherry-picking argument. But because the argument is not properly developed, the Court does not consider the claim on its own. *See, e.g.*, *June J.*, 2023 WL 4998846, at *2; *Brison*, 2015 WL 2152674, at *7.

The Court notes that Plaintiff's counsel has been repeatedly admonished by judges in this district for similar failures to raise or develop arguments, to the detriment or potential detriment of his clients. *See, e.g.*, *Evans J. S. v. Comm'r of Soc. Sec.*, No. C24-5315, 2024 WL 4202162, at *2 (W.D. Wash. Sept. 16, 2024) (appeal dismissed with prejudice because counsel missed statutory deadline and cited no authority supporting an exception); *Janeen D. v. Comm'r of Soc. Sec.*, No. C20-5876, 2021 WL 2411619, at *1 n.1 (W.D. Wash. June 14, 2021) (Plaintiff's counsel "risk[ed] prejudicing his client by waiving an issue not adequately raised in his opening brief."); *Toni M. v. Comm'r of Soc. Sec.*, No. C20-5856, 2021 WL 1625251, at *1 n.1, n.3 (W.D. Wash. Apr. 27, 2021) (counsel's failure to cite to the record "raised the specter of prejudicing his client" and counsel's misstatement of legal standard as requiring ALJ give only "'germane'

reasons for rejecting [claimant's] symptom testimony" demonstrated "inadequate level of diligence"); *Theresa R. v. Comm'r of Soc. Sec.*, No. C20-5705, 2021 WL 913039, at *1 n.1 (W.D. Wash. Mar. 10, 2021) (similar with regard to misstating the legal standard); *Scott D. v. Comm'r of Soc. Sec.*, No. C20-5354, 2021 WL 71679, at *1 n.1 (W.D. Wash. Jan. 8, 2021) (same); *Melissa D. v. Comm'r of Soc. Sec.*, No. C20-5236, 2020 WL 7418078, at *1 n.1 (W.D. Wash. Dec. 18, 2020) (same); *Rebecca V. v. Comm'r of Soc. Sec.*, No. C20-5790, 2021 WL 1140657, at *2 n.1 (W.D. Wash. Mar. 25, 2021) ("Plaintiff's counsel is reminded to provide citations to the record to support factual assertions."); *Margaret T. v. Comm'r of Soc. Sec.*, No. C20-5340, 2020 WL 7122850, at *1 (W.D. Wash. Dec. 4, 2020) (appeal dismissed with prejudice where counsel "failed to allege an actual error") (citation omitted); *Bradley S. v. Comm'r of Soc. Sec.*, No. C20-5328, 2020 WL 7041552, at *3 (W.D. Wash. Dec. 1, 2020) ("Plaintiff's counsel is reminded he owes a duty of diligent representation to his client, which includes presenting a cogent argument accurately identifying the issues being raised on appeal.").

"Congress enacted . . . SSDI benefits provisions of the Social Security Act to protect vulnerable individuals from income insecurity." *Cooper v. Soc. Sec. Admin.*, 131 F.4th 995, 1018 (9th Cir. 2025) (citing *Mathews v. De Castro*, 429 U.S. 181, 185–86 (1976)). Counsel representing claimants seeking disability benefits provide an important service to a particularly vulnerable population. And courts, including the undersigned judge, are understandably reluctant to punish vulnerable litigants with meritorious legal claims for their counsel's failings. But our adversarial legal system requires that the Court decide only those claims that are adequately raised and supported. Counsel is cautioned that if he continues to file inadequate briefing, his arguments may be disregarded, his briefs stricken, or his requests for attorney's fees rejected. The Court may also consider other sanctions for violations of the civil or local rules. Counsel is a smart, capable attorney who knows the law in this practice area and can file briefs that use that

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR RECONSIDERATION - 8

law persuasively. He may not rely on a strategy of doing just enough to raise skeletal claims and trusting the Court to protect his client's rights.

**B.     The ALJ's Errors**

The Court turns now to Plaintiff's sole argument: that the ALJ cherrypicked evidence and failed to consider the full record on remand from the Appeals Council.

*1.     Consideration of Plaintiff's Testimony*

Plaintiff claims the ALJ failed to properly evaluate his testimony in the record. *See* Dkt. 9 at 2 ("The ALJ failed to provide specific clear and convincing reasons for rejecting Plaintiff mental health limitations."). "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Smith v. Kijakazi*, 14 F.4th 1108, 1111–12 (9th Cir. 2021) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*. "At this step, the medical evidence need not corroborate the severity of the alleged symptoms" but rather "the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Id.* (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). Then, provided "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citing *Garrison*, 759 F.3d at 1014–1015).

First, the ALJ found that Plaintiff's "severe medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" AR 23–24. But, the ALJ concluded, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 24.

Second, there are no signs of malingering here. *See* AR 521 ("no evidence of malingering or factitious disorder. . . . likely treatable with medication management and psychotherapy."). Nor does the ALJ claim that Plaintiff is malingering. Thus, the "task is to determine whether the ALJ's adverse credibility finding of [Plaintiff's] testimony is supported by substantial evidence under the clear-and-convincing standard." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

The ALJ explained that, during some examinations, Plaintiff "demonstrated impaired recent memory, limited concentration, limited insight, and at times, agitation[.]" AR 25 (cleaned up). But, on other occasions, Plaintiff had "demonstrated normal memory, normal attention, and normal judgment." *Id.* (cleaned up). Thus, the ALJ claimed, Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms, [] are inconsistent with the evidence of record." The ALJ noted in support of this conclusion that "treatment for mental symptoms [] has been routine and conservative with medication and therapy." *Id.* While Plaintiff "had varied mood and affect, and his provider noted difficulty focusing during sessions, progress notes otherwise indicate stable mental status and otherwise generally normal observations on examination." *Id.*

These general findings are insufficient. *Carmickle*, 533 F.3d at 1160. Thus, the Court concludes that the ALJ should not have disregarded Plaintiff's testimony. On remand, the ALJ should fully consider Plaintiff's subjective medical statements about his symptomology.

### 2. *Fluctuating Symptoms*

The Court turns next to the ALJ's emphasis on Plaintiff's improved symptomology and ability to complete various activities of daily living (ADLs). *See, e.g.*, AR 25. The Ninth Circuit has stressed that "while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017 (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* (citing *Holohan*, 246 F.3d at 1205). The Ninth Circuit advises that "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Id.* Simply because "a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan*, 246 F.3d at 1205. "Caution in making such an inference is especially appropriate when no doctor or other medical expert has opined, on the basis of a full review of all relevant records, that a mental health patient is capable of working or is prepared to return to work." *Garrison*, 759 F.3d at 1017–18 (citation omitted).

Plaintiff claims a disability onset of 2019. AR 31. He claims that both his physical and mental impairments have prohibited work since then. AR 20. Certainly, from 2019 to 2023, there have been fluctuations in Plaintiff's symptoms. *See, e.g.*, AR 1121, 1124, 1142, 1178 (improvements); AR 704, 1111, 1272, 1344. On those good days, he can complete various ADLs that he cannot on bad days. *See, e.g.*, AR 94, 146, 1382, 398. The ALJ, correctly, pointed to these good days in his opinion. *See, e.g.*, AR 25; Dkt. 13 at 8. He notes that, in August 2022,

Plaintiff "reported that he was getting out in nature, riding his e-bike, kayaking, relaxing at the beach, tending to his plants, and spending more enjoyable time with his wife." AR 25. And, in October 2022, Plaintiff reported "being in an overall good mood and his intrusive thoughts being more manageable[.]" *Id.*

But the ALJ also disregarded limitations that Plaintiff faces even in performing these ADLs. For example, in a hearing, Plaintiff noted that he does drive occasionally. AR 90. But he also explained that he does not do so often, and rarely drives more than a few blocks away from his home. AR 56–57. And reports from health care providers explained that Plaintiff could not be seen in person because he "avoids driving." AR 1397. One provider assessment explained, "He is able to drive but he experiences road rage." AR 764. If he goes somewhere, like the grocery store "he gets overwhelmed and must leave." *Id.*

Further, as Plaintiff notes, the evidence "while showing fluctuation, [has] never shown stability in ability to maintain attention and concentration or ability to interact appropriately." Dkt. 9 at 3. Thus, Plaintiff argues, the ALJ's conclusion that "progress notes otherwise indicate stable mental status and otherwise generally normal observations on examination" focuses far too much on the good days and not the bad. AR 25; Dkt. 9 at 3.

For example, on July 7, 2021, Plaintiff met with a mental health practitioner through Mindful Therapy Group. The practitioner stated he was "inattentive, distractible, needed occasional redirection, forgetful[.]" AR 1233. Plaintiff told the practitioner that he has severe inattention: "I forget that I'm making coffee and it takes me hours because I'm distracted--its frustrating[.]" AR 1230. Other providers reported similar symptoms around the same time. *See, e.g.*, AR 1284 (December 2021 visit in which provider wrote Plaintiff "has a difficult time recalling information and often times loses focus mid-sentence."); AR 1287 ("Cl has displayed disorganized thoughts since his initial session-disjointed thoughts, collapse in thought process,

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR RECONSIDERATION - 12

random words and incoherence."); AR 1302 (January 2022 appointment in which provider found "Cl presented more disorganized from last session. Had a difficult time following his thoughts and could not maintain conversation except when recalling a story. Cl did not recall why he was sharing the story and would stop at different points to ask what the point was and what made him share."); AR 1239, 1245, 1257, 1263, 1269, 1275.

Of course, even in that period, there are records of appointments in which he "presented clear headed and focused." AR 1314. On January 4, 2022, he "presented fairly more organized, but slightly anxious." AR 1315. One week later, he presented as "more disorganized from last session." *Id.* A month later, a provider noted, "CI has shown major improvement with medication compliance, less disorganization, but continues to struggle with daily functioning and social interactions. CI presented anxious and had a difficult time maintaining focus." AR 1320.

But these improvements remained inconsistent. In June 2022, Plaintiff "presented confused was not oriented to the date. . . . He had a difficult time focusing and maintain short term memory enough to flow in conversation." AR 1334. He told his provider that he was experiencing "word salad and feeling more paranoid." *Id.* By August, he was able to "spend[] quality time with his father weekly and get[] out into nature." *Id.* Yet in September, his provider noted, "Cl had challenges with his 'memory' during session; he would often forget the point he was making or not have the ability to complete his sentence or thought. He also complained that his most recent medication may be making him sleepy because he has had to nap on most days during the week." AR 1333.

Still, the ALJ found that "[t]reatment records document some mental health issues, but contrary to these medical source statements, they show overall stable mental status and often normal observations on mental status examination." AR 30; *see also* Dkt. 13 at 4 ("The ALJ acknowledged Plaintiff sometimes had difficulty focusing during sessions, and therefore

ORDER REVERSING DENIAL OF BENEFITS AND REMANDING FOR RECONSIDERATION - 13

included restrictions in the RFC to account for those issues with attention and concentration[.]"). The Court finds both that the ALJ committed legal error and that there is not substantial evidence to support the ALJs conclusion. First, the ALJ erred in failing to consider this circuit's consistent case law discussing fluctuating symptoms.

Second, as noted above, "[a]n ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison*, 759 F.3d at 1009 (citation omitted). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1035). District courts "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1035). Where "the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the [ALJ]." *Id.* at 1010 (citation omitted).

Considering the record as a whole, substantial evidence does not support that Plaintiff has "consistently demonstrated" a "stable mental status." AR 25; *see also* Dkt. 13 at 4 ("The ALJ, however, found the overall record showed Plaintiff's mental health was generally stable and his symptoms were not as severe as Plaintiff claimed."). Rather, the Court notes, the ALJ failed to really consider the mountain of evidence of showing extreme fluctuations inherent to Plaintiff's mental health conditions. No reasonable person would accept the evidence offered by the ALJ to find that Plaintiff's condition is stable—especially when considered in conjunction with the other evidence in the record.

And, importantly, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable

to a work environment where it might be impossible to rest periodically or take medication." *Jeremy C. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-CV-01220-HZ, 2020 WL 1467095, at *3 (D. Or. Mar. 25, 2020) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996)).

C.     **Directions on Remand**

Because "additional proceedings can remedy defects in the original administrative proceeding," the Court remands this case to the ALJ. *Garrison*, 759 F.3d at 1019 (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)).

On remand, the ALJ should consider whether Plaintiff was disabled for a portion of the claimed period. *See, e.g.*, *Smith v. Kijakazi*, 14 F.4th 1108, 1113–14, 1116 (9th Cir. 2021) The date of onset is 2019. AR 31. The ALJ's remand opinion was issued in October 2023. AR 33. As the Commissioner notes, there have been periods of marked improvement once the right medication and treatment has been determined. Dkt. 13 at 5. But there have also been periods of "increased symptoms" where Plaintiff "exhibited rapid or somnolent/lethargic speech, racing thoughts, and tangential or disorganized thought process." AR 25. Even if Plaintiff was not disabled for the entire claim period, the record may support other intervals of disability.

*Smith v. Kijakazi* is instructive. 14 F.4th at 1113–14. There, the Commissioner argued that the ALJ found the claimant's "testimony less than credible because it contained inconsistencies, and because [the claimant's] improvement with medication was inconsistent with his claimed disability." *Id.* at 1113. But, the Ninth Circuit explained, "this bolsters rather than cuts against the objection that claimant's testimony could not be discredited as a whole because of changes over time or inconsistencies relevant only to portions of testimony describing a certain period." *Id.* Because the claimant had over time "moved from a state where he appears to have been unable to engage in meaningful work to a state in which he was significantly less

hindered," the court noted that the claimant may have been "disabled for a qualifying portion of the time from his alleged onset date, even if not for the full period." *Id.* at 1113–14.

Despite undertaking a careful consideration of Plaintiff's disability claim, the ALJ still "erred by seeking only to reach a single disability determination for the entire multi-year period, thereby failing to consider whether Smith was disabled for only a qualifying, early portion of that time." *Smith*, 14 F.4th at 1116. Thus, the court remands this case to the agency for further proceedings consistent with this Order.

### III. CONCLUSION

Based on these reasons and the relevant record, the Court ORDERS that this matter be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration consistent with this order. The Clerk is directed to enter judgment for Plaintiff and close the case.

Dated this 12th day of May, 2025.

Tiffany M. Cartwright
United States District Judge